## United States District Court
### District of Massachusetts

```
_____
                               )
KRISTIN SAUER,                 )
                               )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No.
                               )     15-11882-NMG
BELFOR USA GROUP, INC.,        )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves claims of sexual harassment and retaliation brought by plaintiff Kristin Sauer ("Sauer" or "plaintiff") against defendant Belfor USA Group, Inc. ("Belfor" or "defendant") under both M.G.L. ch. 151B and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Pending before the Court is defendant's motion to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion will be denied.

### I.  **Background**

Plaintiff is a Massachusetts resident and a woman who worked for Belfor as a Warehouse Manager from May, 2011 through July, 2012. During that time her direct supervisor was Gerard McGonagle ("McGonagle"), the General Manager for defendant's Boston-area warehouse. Sauer avers that she also took orders

from Corey Massaro, a Project Manager.   After Sauer's first six months of work for the company, she was awarded a $750 bonus for her performance because she had, according to McGonagle, "rescued our warehouse and . . . completely turned the operation around."

According to plaintiff, before she began working at Belfor at least two other women employed there had complained to the company about inappropriate conduct of a sexual nature by Massaro.   Those women had filed public charges of discrimination by Massaro with the Massachusetts Commission Against Discrimination ("the MCAD").   Both women also alleged that McGonagle was aware of Massaro's misbehavior but failed to take any action to address it.   In November, 2011, after the two complaints were filed, Belfor required Massaro to complete a "Supervisor Anti-Harassment" course.   Unfortunately, plaintiff alleges, his conduct did not change after he completed the course.

Sauer avers that throughout her time working at Belfor Massaro made sexually explicit comments on a weekly basis to groups of employees, herself included.   She also alleges that in April, 2012 Massaro stood outside her office and pantomimed cunnilingus through the window before entering the office. Plaintiff further claims that a technician who worked for defendant, Sharon Coto, also made similarly offensive sexual

remarks and publically posted a sexually explicit status message
from her work phone in May, 2012.  Plaintiff reported that
incident to McGonagle, who told her that he would address the
situation.

According to plaintiff, after she reported Coto's behavior,
Coto began ignoring her instructions and speaking to her in a
hostile manner.  Plaintiff reiterated her concerns to McGonagle
in a second meeting on May 10, 2012.  At that time she also
reported Coto's recent behavior toward her as well as Massaro's
sexually explicit conduct and comments.  After plaintiff's
conversation with McGonagle he postponed her annual performance
review, which was scheduled for the next day.

When no apparent action was taken to address her concerns,
Sauer took her complaints to Diane Barbour, a Human Resources
Manager in defendant's corporate office, on May 16, 2012.
Thereafter, McGonagle requested that Sauer accompany him on a
car ride outside the office during which he allegedly instructed
her not to make any further complaints about sexual harassment
because her allegations could cause Massaro to be fired.

Plaintiff contends that Massaro subsequently began acting
more aggressive and hostile toward her, yelling her at least
once per week.  Other employees also began reacting negatively
toward her by questioning her tone when she gave simple
instructions.  In late June, 2012 Massaro's stepfather, Ralph

-3-

Bustin, was hired as the Production Manager for the warehouse. Plaintiff alleges that beginning on his first day of work he attempted to intimidate her by yelling at her and slamming doors.  Bustin also instructed an employee whom plaintiff had assigned to guard the warehouse to complete a personal errand for him, leaving the warehouse unguarded.

Such treatment allegedly caused plaintiff severe anxiety and a serious worsening of her psoriasis for which she had to receive phototherapy treatments.  The week after Bustin caused the warehouse to be left unguarded, Sauer resigned her position but her medical condition allegedly continued to worsen even after her resignation.

In September, 2012 Sauer filed charges against defendant with the MCAD and the Equal Employment Opportunity Commission ("the EEOC").  Defendant responded to the MCAD claim by filing a "position statement" claiming that it had thoroughly investigated Sauer's allegations.  Belfor claimed that it was unable to confirm Massaro's sexually explicit conduct but its Human Resources personnel nonetheless informed Massaro that his employment would be immediately terminated if any further incidents were reported.  It conceded confirmation of the allegation relating to Coto's sexually explicit conduct and that it had suspended Coto without pay for five days.  Plaintiff

avers that Coto had not served such a suspension before plaintiff quit in July, 2012.

On May 21, 2015 plaintiff filed this lawsuit, alleging gender discrimination, sexual harassment and retaliation in violation of M.G.L. ch. 151B and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  On October 14, 2015 defendant filed the pending motion to dismiss.

## II.  <u>Motion to Dismiss</u>

Belfor moves the Court to dismiss the complaint in its entirety both for failure to exhaust administrative remedies and for failure to state a claim.  Plaintiff opposes the motion with respect to her claims under M.G.L. ch. 151B but waives her claims under Title VII of the Civil Rights Act.  Consequently, plaintiff's federal claims are dismissed and the Court's analysis will address only the claims brought under Massachusetts law.  Although the case was removed to federal court on the basis of federal question jurisdiction, the Court retains supplemental jurisdiction over Sauer's remaining state claims pursuant to 28 U.S.C. § 1367.

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is
facially plausible if, after accepting as true all non-
conclusory factual allegations, the court can draw the
reasonable inference that the defendant is liable for the
misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d
1, 12 (1st Cir. 2011).  A court may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. Id.  Rather, the relevant inquiry focuses on the
reasonableness of the inference of liability that the plaintiff
is asking the court to draw. Id. at 13.

When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents
incorporated by reference therein and facts susceptible to
judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st
Cir. 2011).

**B. Analysis**

**1. Failure to Exhaust Administrative Remedies**

Belfor first argues that Sauer's claims should be dismissed
because the complaint does not allege that she exhausted her
administrative remedies with the MCAD and the EEOC after filing
complaints with those agencies.  While such exhaustion is
required for Title VII discrimination claims filed with the
EEOC, see 42 U.S.C. § 20003-5(f)(1), Sauer has voluntarily

dismissed those claims.  On the other hand, no such exhaustion requirement applies to claims filed with the MCAD.  Chapter 151B of the Massachusetts General Laws, which governs employment discrimination claims, imposes no requirement that the MCAD issue a right to sue letter or dismiss a complaint prior to the filing of a civil suit. See M.G.L. ch. 151B § 9.  Nor does it impose a 90-day time limit. Id.  Accordingly, defendant's motion to dismiss is denied to the extent that it is based on plaintiff's failure to exhaust her administrative remedies.

### 2. Failure to State a Claim for Relief

Plaintiff brings claims for sex discrimination and retaliation pursuant to three provision of M.G.L. ch. 151B.  The first, § 4(1), makes it illegal, in relevant part,

> [f]or an employer, by himself or his agent, because of
> the sex[] . . . of any individual . . . to bar or to
> discharge from employment such individual or to
> discriminate against such individual in compensation
> or in terms, conditions or privileges of employment.

M.G.L. ch. 151B, § 4(1).  The statute defines discrimination on the basis of sex to include sexual harassment. Id. § 1(18).  Sexual harassment is defined as

> sexual advances, requests for sexual favors, and other
> verbal or physical conduct of a sexual nature when (a)
> submission to or rejection of such advances, requests
> or conduct is made either explicitly or implicitly a
> term or condition of employment or as a basis for
> employment decisions; (b) such advances, requests or
> conduct have the purpose or effect of unreasonably
> interfering with an individual's work performance by

> creating an intimidating, hostile, humiliating or
> sexually offensive work environment.

Id. The second provision upon which plaintiff relies also specifically prohibits sexual harassment. See id. § 4(16A).

Finally, § 4(4) bans employer retaliation by making it illegal

> [f]or any person, employer, labor organization or
> employment agency to discharge, expel or otherwise
> discriminate against any person because he has opposed
> any practices forbidden under this chapter.

Id. § 4(4).

Plaintiff bases her claims for sex discrimination and retaliation upon a hostile work environment theory. To establish a hostile work environment claim based on either sex discrimination or retaliation, plaintiff must allege that 1) she was subject to harassment, 2) the harassment was based on either gender or retaliation, depending on the claim, 3) the harassment was sufficiently severe or pervasive as to materially alter the conditions of her employment, and 4) the employer is liable for the harassment.[1] See Noviello v. City of Boston, 398 F.3d 76, 92, 94-95 (1st Cir. 2005); Coll.-Town, Div. of Interco, Inc. v.

---

[1] Contrary to defendant's position, the Court agrees with plaintiff that the third element of proof should be construed by use of the disjunctive, i.e. "severe or pervasive." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

Massachusetts Comm'n Against Discrimination, 400 Mass. 156, 162 (1987).

### a. Application of Federal Law

As an initial matter, defendant contends that although plaintiff has abandoned her Title VII claims, the Court should still apply federal law to her claims.  While Belfor is correct that Massachusetts state courts routinely examine Title VII case law when interpreting M.G.L. ch. 151B, Wheatley v. Am. Tel. & Tel. Co., 418 Mass. 394, 397 (1994), the Massachusetts Supreme Judicial Court ("the SJC") has held that "Title VII and the decisions construing it are not determinative" of the meaning of the state's anti-discrimination statute, Coll.-Town, 400 Mass. at 163-64.  Instead, reference to the similar federal statute is merely "helpful in setting forth all the various policy considerations." Id.

Such consideration is appropriate given that certain aspects of the two statutes, such as the scope of employer liability, differ. Noviello, 398 F.3d at 95.  Moreover, Chapter 151B contains an express provision instructing courts to construe the statute liberally in order to accomplish its purposes. M.G.L. ch. 151B, § 9.  Consequently, the Court will consider the extent to which any decision construing Title VII conflicts with Chapter 151B case law precedent when determining how much weight to accord Title VII cases.

### b. Aggregation of Discrimination Claims

Although the SJC does not appear to have addressed the issue, the United States Court of Appeals for the First Circuit has held that claims for sex discrimination and retaliation pursuant to Chapter 151B may be combined to support a plaintiff's claim only when the discriminatory acts "emanate from the same discriminatory animus." Noviello, 398 F.3d at 87 (citing Ruffino v. State St. Bank & Trust Co., 908 F. Supp. 1019, 1040 (D. Mass. 1995)).  No such single animus is presented by Sauer's claims.  Instead, the alleged retaliatory conduct appears to stem from "a distinct intent to punish or to rid a workplace of someone who complains of unlawful practices." Ruffino, 908 F. Supp. at 1040.

Plaintiff correctly points to cases in which the First Circuit and Massachusetts courts have permitted combination discrimination claims.  Such claims have, however, generally involved discrimination based upon a combination of identity characteristics (i.e. sex and race) which intersected to create a discrete protected group, rather than discrimination based upon the combination of a protected characteristic and protected conduct. See, e.g., Core-Boykin v. Boston Edison Co., No. 01-5156-E, 2004 WL 855567, at *7 (Mass. Super. Ct. Apr. 13, 2004). The former claims are more likely to be motivated by a single animus. See Noviello, 398 F.3d at 87.  Moreover, in the one

-10-

combination gender-retaliation case Sauer cites, the aggregation of the two claims was not an issue presented to the court and therefore the court did not analyze the suitability of a combination claim. See Brown v. Trustees of Boston Univ., 891 F.2d 337, 353 (1st Cir. 1989).

Plaintiff also argues that a combination claim should be permitted because the two kinds of harassment she experienced are "inherently tied" to one another.  As another session of this Court has noted

> where a plaintiff claims hostile environment discrimination and retaliation the two causes of action are often factually and legally intertwined . . . . Unless specific facts suggest otherwise, [however,] the simple factual and legal intersection between an underlying claim of discrimination and retaliation is insufficient.

Ruffino, 908 F. Supp. at 1040.  Plaintiff points out that when evaluating gender discrimination claims, courts generally look to the employer's response after it learned of the harassment. See, e.g., Coll.-Town, 400 Mass. at 167-68.  Contrary to plaintiff's implication, however, this is not because retaliation by the employer is part of a gender discrimination claim.  Instead, courts examine the employer's response in order to determine whether the employer should be subject to liability because it failed to take adequate steps to remedy the harassment.  Accordingly, Sauer has failed to establish the

prerequisites for a combination claim and the Court will analyze her gender discrimination and retaliation claims separately.

### c. Gender Discrimination

### 1. Harassment Based on Sex

Belfor first challenges plaintiff's sex discrimination claim on the basis that she has not alleged that any of the conduct of which she complains was directed at her "because of [her] sex." See M.G.L. ch. 151B, § 4(1).  Defendant avers that, in order to state a claim for gender discrimination under Chapter 151B, plaintiff must demonstrate that a "discriminatory animus" motivated the alleged conduct. Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 83 (1st Cir. 2004).

Plaintiff responds that the statute explicitly defines its ban on sexual harassment to include "verbal or physical conduct of a sexual nature" without any reference to motive. See M.G.L. ch. 151B, § 1(18).  She further rejoins that the SJC has held that

> nowhere is discrimination because of a victim's sex made an essential element of a sexual harassment claim in Massachusetts.

Melnychenko v. 84 Lumber Co., 424 Mass. 285, 290 (1997).

On this point both plaintiff and defendant are correct but only because they base their arguments on different prohibitions of Chapter 151B.  Plaintiff is correct that she need not allege a discriminatory animus in order to succeed on her claim under

M.G.L. ch. 151B, § 4(16A), which specifically bans sexual harassment.  By contrast, § 4(1), the provisions which prohibits gender discrimination more generally, only proscribes discriminatory conduct which is engaged in "because of the [plaintiff's] sex."  The allegation of a discriminatory animus is, therefore, required to succeed on a claim dependent upon that provision.

Plaintiff has alleged in her complaint that Massaro and Coto harassed her "because of her sex."  Given that much of the alleged conduct was directed not just at Sauer but also at other colleagues, that claim is not well-supported by the complaint. Nonetheless, the circumstances of plaintiff's alleged harassment render the allegation at least "plausible on its face." Iqbal, 556 U.S. at 667.  Consequently, neither plaintiff's claim based on § 4(1) nor her claim based on § 4(16A) will be dismissed on that ground.

## 2. Severe or Pervasive Harassment

To state a claim for a hostile work environment, plaintiff must allege harassment that is

> sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

Harris, 510 U.S. at 21.  The court must examine the totality of the circumstances, including the

-13-

frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating,
or a mere offensive utterance; and whether it
unreasonably interferes with [the] employee's work
performance.

Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

Sauer has alleged that she was subjected to crude and
offensive sexual conduct on a weekly basis over the course of
six months.  She claims that this conduct was intimidating, that
it made her feel humiliated, that it interfered with her ability
to do her work.  She also avers that it caused her significant
anxiety and distress leading to a worsening of her medical
condition, "thus underscoring the negative effect on her work
performance." Noviello, 398 F.3d at 94.

The multiple incidents Sauer describes cannot be taken in
isolation but rather must be viewed as whole. Perez-Cordero v.
Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 29 (1st Cir. 2011).
The SJC has held that even if individual "incidents in isolation
may not be serious enough for complaint," they can aggregate
over time to create a hostile work environment. Cuddyer v. Stop
& Shop Supermarket Co., 434 Mass. 521, 532-33 (2001); see also
Clifton v. Massachusetts Bay Transp. Auth., 445 Mass. 611, 616
n.5 (2005).  Defendant objects that many of the alleged verbal
acts were directed to groups of people rather than plaintiff
alone.  As discussed above, the fact that not all of the alleged
conduct was aimed directly at plaintiff certainly casts doubt on

-14-

whether a discriminatory animus existed but the fact that others in the warehouse were also exposed to an environment "saturated with . . . sexual innuendo," does not defeat plaintiff's claim that she endured a hostile work environment. Pelletier v. Town of Somerset, 458 Mass. 504, 523 (2010).

### 3. Employer Liability

Under Massachusetts law, an employer can be subject to liability for a hostile work environment under two circumstances. First, the employer is strictly liable if the acts of harassment were committed by a supervisor who is "vested with authority." Coll.-Town, 400 Mass. at 165-67 & n.5. To be considered a supervisor, an employee need not be plaintiff's direct supervisor. Instead, he may have actual supervisory authority over other subordinates and hold himself out as having authority over the plaintiff, such as by directing activities and assigning work. Massachusetts Commission Against Discrimination, Sexual Harassment in the Workplace Guidelines III(B) (2002) [hereinafter Sexual Harassment Guidelines]; LeClerc v. Interstate Distributors Div. of Hudson News Co., No. 9702008, 2000 WL 33170694, at *6 (Mass. Super. Ct. Aug. 31, 2000).

Plaintiff has alleged that Massaro was the Project Manager for the company's Boston-area warehouse and that he supervised up to 50 employees in the course of his job. She also claims

-15-

that she took orders from Massaro as part of her work.
Defendant responds that it is not vicariously liable for
Massaro's actions because he did not have the authority to take
"tangible employment actions" against Sauer, citing <u>Vance</u> v.
<u>Ball State Univ.</u>, 133 S. Ct. 2434, 2439 (2013). <u>Vance</u>'s
analysis of employer liability was explicitly confined to the
requirements of Title VII, however, and the Court did not
address Chapter 151B. <u>Id.</u> Belfor avers that the subject
interpretation of Title VII is, nonetheless, somehow dispositive
of this Court's interpretation of Chapter 151B because the
opinion constitutes binding U.S. Supreme Court precedent. That
argument misinterprets the extent of the case's holding and,
moreover, is illogical for several reasons.

Chapter 151B is a separate statute from Title VII and was
enacted by a different legislature. The statutory text contains
no requirement that a direct supervisory relationship exist
between the harasser and the victim for liability to attach but
rather proscribes gender discrimination against "any individual"
and sexual harassment of "any employee." <u>See</u> M.G.L. ch. 151B, §
4(1) & 4(16); <u>Morehouse</u> v. <u>Berkshire Gas Co.</u>, 989 F. Supp. 54,
64 (D. Mass. 1997). Unlike Title VII, Chapter 151B extends
liability not just for actions of the employer but also for
actions of the employer's "agents." M.G.L. ch. 151B, § 4(1) &
4(16); 42 U.S.C. § 2000e-2(a) & 3(a). Moreover, the statute

-16-

contains an explicit dictate that courts construe its provisions liberally in order to give effect to its intended purpose. M.G.L. ch. 151B, § 9.  Because of that dictate and because of the textual differences between the two statutes, the SJC "frequently do[es] not follow the reasoning of Federal appellate decisions applying Title VII." Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 536 (2001).

Furthermore, because the state legislature delegated to the MCAD the authority to promulgate policies to effectuate the purposes of the statue, the SJC accords "substantial deference" to the MCAD's interpretive guidelines. Modern Cont'l/Obayashi v. Massachusetts Comm'n Against Discrimination, 445 Mass. 96, 106 (2005).  As explained above, those guidelines state that an employer is liable for the actions of an employee who exercises apparent supervisory authority over the plaintiff by assigning her work. Sexual Harassment Guidelines III(B).  Accordingly, plaintiff need not allege that Massaro was her direct supervisor in order for Belfor to be vicariously liable for his actions.

Plaintiff does not, however, allege that Coto had supervisory authority over her.  Accordingly, to determine whether defendant is liable for Coto's actions we proceed to the second theory under which employers may be liable pursuant to Chapter 151B.  The statute imposes liability on an employer for acts of co-employees only when the employer

-17-

knew or should have known of the charged sexual
harassment and failed to implement prompt and
appropriate action.

White v. New Hampshire Dep't of Corr., 221 F.3d 254, 261 (1st

Cir. 2000).

Sauer has alleged that she provided Belfor with ample

notice of the alleged harassing conduct by meeting with

McGonagle, her supervisor, at least three times as well as by

notifying a manager in the corporate human resources department.

Plaintiff and defendant dispute whether the MCAD complaints

filed by two other Belfor employees could also have placed

Belfor on notice of the hostile work environment created by

Massaro's sexualized conduct.  The Court need not resolve this

issue, however, because plaintiff has adequately alleged that

she personally notified Belfor of the harassment.

Plaintiff has also adequately asserted that Belfor did not

take "prompt and appropriate action" in response to her

complaints.  While acknowledging that Coto was told she would be

suspended without pay for five days, Sauer states that such

suspension had not yet occurred by the time she resigned in

July. Plaintiff further avers that defendant did not address

Massaro's behavior.  Defendant responds that it required Massaro

to undergo sexual harassment training and that it informed

Massaro that further reports of harassment would lead to the termination of his employment.[2]

Sauer claims that the training actually occurred before she complained of Massaro's behavior and in response to previous complaints about Massaro by other employees.  Furthermore, it is unclear whether Massaro was threatened with termination before or after Sauer's complaint.  Belfor's threat does not, therefore, necessarily constitute an action in response to plaintiff's complaint.  Accordingly, plaintiff has sufficiently alleged that defendant failed promptly to take appropriate action when it was notified of harassing conduct and she has, therefore, met the pleading standard with respect to employer liability.

### d. Retaliation

#### 1. Severe or Pervasive Harassment

The standard for demonstrating severe or pervasive retaliatory harassment is the same as that discussed above in the context of sexual harassment.  Plaintiff has alleged that, in response to her complaints about the alleged sexual harassment, she experienced retaliation from a number of

---

[2] Because this is a 12(b)(6) motion, defendant's responses are considered only to the extent that they are set forth in its "position statement" filed in response to Sauer's MCAD complaint which was incorporated by reference into the complaint in this case.

employees.  She claims that McGonagle attempted to intimidate her into dropping her complaints and that he postponed her annual performance review after she complained.  Furthermore, she asserts that Massaro became much more aggressive and hostile in his interactions with her, that Massaro's father slammed doors and yelled at her, and that Coto and other employees questioned or ignored her instructions.  Sauer avers that this conduct interfered with her ability to do her job and caused her anxiety which exacerbated her psoriasis.

Even accounting for any relationship issues which may have pre-existed between plaintiff and Coto, plaintiff has sufficiently alleged conduct that goes beyond the ordinary "unpleasantness" that results when one complains about a co-worker's conduct. Noviello, 398 F.3d at 93.  She has plausibly demonstrated a retaliatory animus.  Consequently, defendant's argument for dismissal on this ground fails.

### 2. Employer Liability

Plaintiff has also alleged a sufficient basis for employer liability for retaliatory harassment.  As discussed above, she has stated a claim that Belfor is vicariously liable for Massaro's acts because Massaro had apparent supervisory authority over Sauer.  Furthermore, Belfor is indisputably liable for McGonagle's actions because McGonagle was Sauer's direct supervisor.  Sauer has also stated a plausible claim that

defendant is liable for Bustin's conduct given that he was a part of management with supervisory duties at least over some employees. See Morehouse, 989 F. Supp. at 64 (finding it unnecessary for a manager either to be plaintiff's direct supervisor or to exercise supervisory authority over plaintiff for liability to attach).

Finally, plaintiff has alleged that she reported Coto's retaliatory conduct to McGonagle, putting Belfor on notice, and that defendant took no substantive action in response to her complaint. Taken together, these allegations show that defendant, via its agents, had adequate notice of the retaliatory conduct and failed to address it. See Coll.-Town, 400 Mass. at 166-67.

### e. Constructive Discharge

To state a claim for constructive discharge, plaintiff must allege that she

> (1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another with similar skills and qualifications.

Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 612-13 (1st Cir. 2000). The parties' dispute concerns the third element, whether Sauer was actually constructively discharged. Constructive discharge occurs when an employee is "effectively force[d]" to resign. GTE Prod. Corp. v. Stewart, 421 Mass. 22,

33-34 (1995).  Such a claim requires a showing of harassment
that is more severe than is required for a hostile work
environment claim and may occur when an employer "effectively
prevents an employee from performing her job." Luciano v. Coca-
Cola Enterprises, Inc., 307 F. Supp. 2d 308, 320 (D. Mass.
2004).

Plaintiff has alleged that both Massaro, through his sexual
pantomiming and subsequent entrance into her office, and
McGonagle, through his act of making her leave the warehouse
with him before he pressured her to withdraw her complaint,
directed physically intimidating conduct at her.  Bustin also
treated plaintiff aggressively, yelling and slamming doors.  She
has alleged that such conduct, as well as defendant's failure to
address it, caused her anxiety, exacerbated her psoriasis and
made her so "sick to her stomach" that she had to leave work.
Moreover, she has alleged that Bustin undermined her ability to
do her job by reassigning staff and that Coto and other
employees began questioning her orders in retaliation for her
protected conduct.

The described circumstances are not as dire as the abuse
imposed upon some other plaintiffs. See, e.g., Aviles-Martinez
v. Monroig, 963 F.2d 2, 6 (1st Cir.1992) (finding constructive
discharge when an employer "removed all of [plaintiff's] files
and then chastised him for not doing his work").  Nonetheless,

-22-

taking such allegations as a whole plaintiff has, at least
marginally, stated a plausible claim that she was "effectively
prevent[ed]" from performing her job and "effectively force[d]"
to resign in order to protect her health and her professional
status. See Luciano, 307 F. Supp. 2d at 320; GTE Prod. Corp, 421
Mass. at 34.

### f. Punitive Damages

Finally, Belfor asks the Court to strike plaintiff's
request for punitive damages.  The SJC has held that an award of
punitive damages in the context of a Chapter 151B claim is
appropriate only where the defendant's conduct is "outrageous or
egregious." Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 110-
11 (2009).  In determining whether punitive damages are
warranted, courts should consider 1) whether there was a
conscious or purposeful effort to demean the plaintiff because
she was a member of the relevant class, 2) whether the defendant
was aware of or recklessly disregarded the likelihood that
serious harm would arise, 3) the harm suffered by the plaintiff,
4) the defendant's conduct after learning of the likelihood of
harm and 5) the duration of the wrongful conduct. Id. at 111.

Here, plaintiff has alleged that she endured conduct
creating a hostile work environment for at least six months,
that the conduct was directed at her because of her gender, that
she reported the conduct and that defendant responded

inadequately, that she suffered retaliatory behavior from defendant's supervisors due to her reporting of the conduct and that she suffered harm through constructive discharge and a worsening of her medical condition.  It is not up to the Court at this stage to determine whether plaintiff's allegations are persuasive enough to warrant her ultimate success.  Plaintiff has alleged sufficient facts to state a claim for punitive damages.

**ORDER**

For the foregoing reasons,

1) plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, are **DISMISSED** and

2) defendant's motion to dismiss (Docket No. 26) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated September 7, 2016